Filed 10/13/23  Asi v. Hollywood Foreign Press Assn. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HUSAM "SAM" ASI, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HOLLYWOOD FOREIGN PRESS ASSOCIATION, <br><br> Defendant and Appellant. | B327002 <br><br> (Los Angeles County Super. Ct. No. 22STCV15728) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed in part, reversed in part and remanded with directions.

Latham & Watkins, Marvin S. Putnam, Chandler S. Howell and Robert J. Ellison for Defendant and Appellant.

King & Ballow, Richard S. Busch and David M. Niemierzycki for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff, an entertainment journalist, was publicly accused of sexual misconduct in the press. At the time the accusations were made, plaintiff was a member of the Hollywood Foreign Press Association (HFPA). In response to these accusations against plaintiff, HFPA issued statements to the press stating it would investigate the allegations and had placed plaintiff on probation from its organization pending the results of the investigation. Plaintiff then filed suit against HFPA based partly on HFPA's statements to the press. In response, HFPA filed a special motion to strike under our anti-SLAPP[1] statute, Code of Civil Procedure section 425.16,[2] arguing its statements to the press were protected activity. The trial court denied the motion in part. HFPA appeals the denial of its special motion to strike. We affirm in part and reverse in part the trial court's order and remand the matter with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Parties*

HFPA is a private membership association consisting of approximately 100 journalists who report on entertainment news for foreign markets. Plaintiff and respondent Sam Asi (Asi) became an HFPA member in 2010 and has previously worked as a journalist for the BBC and the newspaper Al-Quds Al-Arabi.

---

[1]     "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

B.    *TheWrap Article and HFPA Response*

On February 2, 2022, the entertainment news outlet TheWrap published an article detailing allegations made by three women accusing Asi of sexual misconduct. At the time the article was published, Asi was a member of HFPA and TheWrap approached the HFPA for comment on these allegations. HFPA provided a statement to TheWrap, which the parties refer to as a press release, and later that same day TheWrap published a second article that incorporated HFPA's comment. HFPA's comments in the first press release, as reported by TheWrap, were as follows: "A spokesperson for the HFPA—which has been under fire for much of the last year amid accusations of corruption, racism and self-dealing that prompted NBC to back out of televising the Globes last month—said that the organization sent the information provided by TheWrap to an outside law firm for review, citing the group's 'intolerance for any type of discrimination or harassment.'

"'The HFPA takes any and all allegations very seriously and does not condone any type of inappropriate misconduct or behavior,' the spokesperson said. 'If it is found that a member has violated the Code of Conduct, disciplinary action will be taken, including suspension and/or expulsion from the organization. Upon receiving this information, we immediately sent the complaints to the outside law firm for review and investigation. The HFPA strongly encourages anyone with any complaint against any member to do the same.'"

On February 7, 2022, HFPA issued a second press release which was published by TheWrap and The Los Angeles Times. As reported by TheWrap, HFPA's second press release confirmed Asi had been placed on probation from HFPA pending the results of its investigation pursuant to HFPA's Code of Conduct. It further stated: "'Grievance procedures were

3

designed to govern the investigation of any alleged violations of this Code,' an HFPA spokesperson said in a statement provided to TheWrap. 'We take these conduct rules very seriously. As such, any member accused of alleged sexual assault is put on probation pending the completion of an investigation by an outside law firm into the allegations.'" Before HFPA completed its investigation, Asi filed this action against HFPA and two of its employees.

C.      *Complaint*

Asi's complaint, filed May 11, 2022, asserts 14 causes of action against HFPA and its codefendants. The complaint asserts a wide range of allegations of wrongdoing by HFPA, in some instances dating back to 2013, including allegations of racial discrimination and sexual harassment, retaliation, as well as mismanagement and corruption in the operation of HFPA itself and, more specifically, its website. These allegations include the claim that HFPA violated its bylaws and procedures in issuing the two press releases in response to TheWrap's article. All allegations of wrongdoing are incorporated by reference into every cause of action pled in the complaint.

D.      *Special Motion to Strike*

On July 18, 2022, HFPA filed a special motion to strike under section 425.16. HFPA's motion sought to strike the first nine of Asi's 14 causes of action to the extent they arose from HFPA's issuance of the press releases, which HFPA asserted was protected activity. HFPA's special motion to strike targeted Asi's claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious breach of the implied covenant of good faith and fair dealing, (4) tortious interference with contract, (5) tortious interference with prospective economic relations, (6) violation of

Business and Professions Code section 17200, (7) intentional infliction of emotional distress, (8) negligent infliction of emotional distress, and (9) violation of the common law right to fair procedure.

Asi opposed HFPA's motion, arguing the press releases were not activity protected by section 425.16. He also claimed the challenged causes of action did not arise from the press releases but from other alleged misconduct. Finally, he argued that, to the extent they did arise from the releases, he had established a probability of success on the merits of his claims.

On December 9, 2022, the trial court issued its order on HFPA's special motion to strike. The court found the press releases constituted protected activity under section 425.16. With the exception of Asi's third cause of action for tortious breach of the implied covenant of good faith and fair dealing, the court held each of the nine challenged causes of action were based, in part, on HFPA's issuance of the press releases. Having determined the third cause of action for tortious breach of the implied covenant did not arise from the press releases, the court denied the motion as to that cause of action. The court granted HFPA's motion as to Asi's eighth cause of action for negligent infliction of emotional distress, holding such a cause of action "only lies in direct or bystander distress situations."[3] As to the remaining seven causes of action, the Court denied the motion, finding Asi had sufficiently demonstrated a probability of success on the merits of those claims under section 425.16.

---

[3] Neither party has appealed the trial court's striking of the eighth cause of action for negligent infliction of emotional distress and, we do not address it further in this appeal.

5

HFPA filed a timely notice of appeal of the order denying its special motion to strike.

**DISCUSSION**

A.   *Anti-SLAPP Procedure*

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)  A "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  The anti-SLAPP statute itself provides that its protections "shall be construed broadly." (§ 425.16, subd. (a).)

In evaluating an anti-SLAPP motion to strike, courts conduct a two-step analysis.  First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit.  Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may

6

be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) "[T]o the extent any acts are unprotected, the claims based on those acts will survive." (*Id.* at p. 1012.) "A mixed cause of action is subject to section 425.16 if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287.)

We review the trial court's order denying the anti-SLAPP motion de novo, applying the same two-step analysis. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

B.    *Prong One: Arising from Protected Activity*

"At the first step of the analysis, the defendant must make two related showings. Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson, supra,* 7 Cal.5th at p. 887.)

HFPA argues its press releases constitute protected activity under the anti-SLAPP statute, and its special motion to strike is limited to the claims that it alleges arise from those press releases. To the extent the challenged causes of action also arise from or are based on claims of discrimination,

7

sexual harassment, or other wrongdoing, those causes of action will survive. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393–394; *Bonni, supra,* 11 Cal.5th at p. 1012 (*Baral*).)  To determine whether HFPA has made the requisite showing under the first prong, we must decide if the press releases in question constitute protected activity and whether the HFPA's issuance of those press releases forms the basis—either in whole or in part—of the challenged causes of action.

### 1.     *Protected Activity*

"At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Wilson, supra*, 7 Cal.5th at p. 888.)  Protected activity has been statutorily defined to include four categories of statements or conduct. (§ 425.16, subd. (e).)  HFPA argues the press releases fall within two of these categories, specifically "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)) and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)).  To fall within this second category, there must exist a "functional relationship" between the speech and the public conversation about a matter of public interest.  (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 904 (*Bishop*).)

Asi does not dispute the press releases constitute a writing made in a public forum under subdivision (e)(3), rather he argues that the HFPA cannot show the press releases were made in connection with an issue of public interest under either subdivision.  We disagree.

8

"Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly." (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 464, internal quotation marks omitted.) Accordingly, an issue of public interest "is *any issue in which the public is interested.* In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042.) "'Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals.' [Citations.]" (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 674.)

The California Supreme Court has set out a two-part test to determine whether the public interest requirement has been satisfied. "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150 (*FilmOn.com*).) *FilmOn.com*'s "first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1253.) In determining whether the second step is satisfied, courts look to considerations such as whether (1) the subject of the speech was a person or entity in the public eye, (2) the speech could affect large numbers of people beyond the direct participants, (3) the speech

9

occurred in the context of an ongoing controversy, dispute, or discussion, and (4) the speech affected a community like that of a governmental entity. (*FilmOn.com,* at pp. 149–150.)

*Bishop v. The Bishop's School* is instructive. In *Bishop*, a school terminated a teacher's employment. The teacher sued the head of the school and the school itself for defamation based on (1) the termination letter the school sent to the teacher and (2) a statement made by the head of the school to the school's student newspaper. (*Bishop, supra,* 86 Cal.App.5th at p. 897.) The Court of Appeal determined defendants did not meet their burden to show the termination letter arose from protected activity, which was a private communication between the school and the teacher "with the purpose of privately communicating an employment decision" and did not contribute toward any public debate or discourse. (*Id.* at p. 907.)

However, the Court found the comments made to the student newspaper did constitute protected activity. The comment in question was the statement "'We are committed to the safety and well-being of our students past and present.'" (*Bishop, supra*, 86 Cal.App.5th at p. 907.) The Court determined student safety and well-being is a matter of public interest, and the alleged statement sufficiently contributed to public discussion of that issue to qualify for protection under section 425.16, subdivision (e)(4). (*Id.* at pp. 907–908.) In reaching this conclusion, the Court reasoned "Kim made the statement to someone interviewing him on behalf of the newspaper; he did so with the knowledge that his statement would likely be published in the newspaper to an audience of the School's students, staff, and potentially parents or others in the community; and his purpose was to communicate defendants' position regarding student safety and well-being. [Citations.] Kim's quote is therefore entitled to anti-SLAPP protection." (*Id.* at p. 908.)

10

We reach the same result here. Asi primarily argues HFPA cannot satisfy the public interest requirement here because he is not a sufficiently public figure. However, Asi's notoriety is only one way this requirement can be met. HFPA itself is, as Asi characterizes it in his complaint, "a noteworthy entity within the world of entertainment journalism." It is undisputed that, before the public accusations against Asi, HFPA had faced widespread scrutiny and criticism over its conduct and culture. In his complaint, Asi alleges "the gross mismanagement that Dr. Asi and other HFPA members had sought to address came home to roost when investigative journalists exposed the HFPA's history of corruption and racism." Asi's complaint also directly asserts HFPA's press releases were issued in response to prior public criticism, alleging "the HFPA, under fire in the Los Angeles Times and other media for failing so miserably to keep its house in order, is using the false claims against Dr. Asi as an opportunity to make it appear as if it takes allegations seriously and is changing its culture."

HFPA also acknowledges this history of public scrutiny and criticism in its handling of allegations of member misconduct, including its passage of new bylaws meant to "reform" the organization. TheWrap's article quoting the first HFPA release similarly mentions the prior public scrutiny faced by the HFPA, stating "A spokesperson for the HFPA—which has been under fire for much of the last year amid accusations of corruption, racism and self-dealing that prompted NBC to back out of televising the Globes last month—said that the organization sent the information provided by TheWrap to an outside law firm for review, citing the group's 'intolerance for any type of discrimination or harassment.'" TheWrap made similar comments in reporting on the HFPA's second press release, noting "The spokesperson

11

added that under the group's new code of conduct—which was established in the wake of accusations of corruption, racism and self-dealing—Asi will be unable to partake in any HFPA-related activities until an investigation by an outside law firm has been completed."

There was public interest in HFPA's handling of public allegations of misconduct at the time TheWrap reported on the accusations against Asi. HFPA's press releases must be understood in this context, as Asi himself alleges in his complaint. HFPA's public comments in the releases are not focused on the specifics or truthfulness of the allegations made against Asi but instead are focused on HFPA itself and how it would respond to these public accusations. In its first release, HFPA does not mention Asi or discuss the specific allegations made against him. Instead, HFPA states in general terms that it takes all allegations seriously, would discipline any members found to violate its Code of Conduct, and had forwarded the complaints to an outside law firm for review and investigation. In its second press release, HFPA simply acknowledged Asi had been placed on probation until the completion of the investigation as mandated by HFPA's new policies.

HFPA's press releases were statements to the press made for public dissemination in response to public scrutiny which were intended to show it had legitimately reformed in the wake of public criticism. As with *Bishop*, HFPA's purpose in issuing these releases was to communicate to the public that it would follow its new policies and procedures to investigate accusations of misconduct. Under *Bishop*, such statements are protected activity for anti-SLAPP purposes under section 425.16, subdivision (e)(4) even if Asi himself is not a public figure.

## 2. *Activity Giving Rise to Plaintiff's Claims*

A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) To determine whether a challenged allegation or claim "arises from" protected activity we must determine whether protected activity was the alleged injury-producing act forming the basis for the claim. (*Id.* at pp. 1062–1063.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

We find nearly all of the causes of action challenged by HFPA's motion arise, in part, from the issuance of the press releases. In paragraph 16 of his complaint, Asi alleges the press releases violated HFPA's bylaws, procedures, and rules. Asi's cause of action for breach of contract sets out a list of alleged breaches, including the claim that "Defendants breached their obligations to Dr. Asi by summarily, unfairly and unlawfully . . . . [¶] . . . Engaging in the conduct described within paragraphs 10 through 24 of this Complaint each of which are incorporated herein by this reference." Asi's cause of action for breach of contract is expressly based, in part, on the issuance of the press releases.

The same is true of Asi's cause of action for breach of the implied covenant of good faith and fair dealing. In his complaint, Asi expressly states, "Defendants, HFPA, Goeckner, and Lee have materially breached the implied covenant of good faith and fair dealing by, inter alia . . . . [¶] . . . Engaging in the conduct described within paragraphs 10 through 24 of this Complaint each of which are incorporated herein by this reference." Asi's third cause of action for tortious breach of this implied covenant states it is

13

based on "the acts and omissions alleged above and by arbitrarily enforcing HFPA's bylaws." The issuance of the press releases was an act "alleged above" and forms the basis of Asi's claim for tortious breach of the implied covenant.

Asi's causes of action for intentional interference with contract and with prospective economic relations are also both based on the misconduct alleged in "paragraphs 10 through 24" of the complaint, which necessarily includes the allegation that HFPA breached its bylaws and procedures by issuing the press releases. The same is true of Asi's causes of action for intentional and negligent infliction of emotional distress. Asi appears to concede the press releases form the basis of these claims, as he offers no argument to the contrary in his briefing before us.

In pleading a cause of action for violation of Business and Professions Code section 17200, Asi specifically alleges "The conduct of HFPA . . . described above and in paragraphs 10 through 24 of this Complaint incorporated herein by this reference, as well as the additional causes of action within this Complaint constitute unlawful, unfair, and/or coercive and illegal business practices in violation of California Business and Professions Code Section 1700 [*sic*], et. seq., including, inter alia, . . . failure to adhere to HFPA's Bylaws and Code of Conduct." The plain language of the Complaint indicates Asi is alleging that all of the conduct by the HFPA as alleged in paragraphs 10 through 24 are the basis for this claim, which includes the allegations related to the press releases in paragraph 16. Additionally, the language of the cause of action makes specific reference to alleged breaches of HFPA's bylaws and Code of Conduct, mirroring the allegations in paragraph 16 that the press releases violated HFPA bylaws and rules.

14

As for Asi's ninth cause of action for violation of the common law right of fair procedure, it is based on HFPA's placing of Asi on probation pending the outcome of its investigation and not on the issuance of the press releases. While this cause of action inartfully incorporates the allegations of all preceding paragraphs, the only harm alleged and relief requested concern Asi's probation. Asi's complaint alleges the right to fair procedure protects "members from suspension or probation" from certain trade organizations. He alleges membership in the HFPA carries significant benefits for members and that he "is now being adversely affected in his ability to practice his profession by virtue of his probation from the HFPA without even a semblance of fair procedure." This cause of action seeks "injunctive relief against defendants prohibiting them from denying him the benefits of membership in the HFPA based on unsubstantiated claims." Nothing in Asi's complaint indicates this cause of action is based in whole or in part on the issuance of the press releases.

We find HFPA has failed to carry its burden under prong one of the anti-SLAPP analysis as it has not shown the ninth cause of action for violation of the common law right of fair procedure arises from protected conduct. The trial court properly denied HFPA's motion as to the ninth cause of action. However, it found HFPA had carried its burden under prong one and Asi had established a probability of prevailing under the second prong of the anti-SLAPP analysis. Because we find HFPA has not carried its burden under prong one, we do not need to reach the question of whether Asi has carried his burden under prong two. We therefore affirm the trial court's denial of HFPA's motion as to this ninth cause of action, though we disagree with the court's reasoning for reaching that result.

15

For these reasons, we find HFPA has carried its burden under prong one as to each challenged cause of action except Asi's ninth cause of action for violation of the common law right of fair procedure. We turn next to the question of whether Asi has carried his burden under prong two to establish a probability of prevailing on the seven remaining causes of action put at issue by HFPA's special motion to strike.

C.    *Prong Two: Probability of Success on the Merits*

Under the second anti-SLAPP prong, a plaintiff "need only establish that his or her claim has 'minimal merit.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) To satisfy this burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Ibid*.) Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Ibid*.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "However, speculative inferences not supported by the evidence proffered need not be considered." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795.) "The prima facie showing of merit must be made with evidence that is admissible at trial." (*Salma, supra*, 161 Cal.App.4th at p. 1289.)

## 1.    *Contract Claims*

In opposing HFPA's motion to strike, Asi argued he could establish a probability of success on his first claim for breach of contract because the press releases violated the terms of the HFPA Whistleblower Policy, the HFPA Code of Professional and Ethical Conduct (Code of Conduct), and the HFPA Bylaws as amended and restated on August 4, 2021.  He also argued his second cause of action for breach of the implied covenant of good faith and fair dealing is based on an alleged breach of the implied terms of the HFPA Reporting and Grievance Policy for Members (Grievance Policy).  We examine each of these documents to determine whether Asi has met his burden of demonstrating a probability of success on these alleged breaches.

### a.    *Breach of Contract*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 821.)  While the parties dispute whether the Whistleblower Policy, Bylaws, and Code of Conduct are enforceable contracts, we ultimately need not reach this issue as we find that Asi has not demonstrated the press releases breached any terms of these documents.

### i.    *Whistleblower Policy*

The HFPA Whistleblower Policy was established, by its express terms, "to protect from retaliation directors, officers, employees, active members and volunteers of HFPA who report suspected improper conduct (each, a 'Covered

17

Person') and to provide a means for Covered Persons to raise good faith concerns" about actions taken by or within HFPA.

Asi alleges HFPA's press releases violated the confidentiality provision of the Whistleblower Policy, which provides "Any investigation will be conducted in a manner that conceals and protects the Covered Person's identity and the reported information (if necessary under the circumstances) to the greatest extent practicable given legal requirements, consistent with the need to conduct a fair and adequate investigation and take necessary corrective action." The confidentiality provision thus protects the identity of "Covered Persons" and the information reported by them. In the context of TheWrap's article and the HFPA's investigation into its claims, Asi is not a "Covered Person" as defined by the Whistleblower Policy. Instead, the individuals accusing him of sexual misconduct would be Covered Persons under the policy, and the information they reported was released publicly in an article published by TheWrap. The content of the press releases, HFPA's investigation, and Asi's probation were not contained in the allegations of his accusers.

Asi has not shown the press releases revealed any information about the identity of his accusers or their allegations which was not already public information such as to run afoul of the confidentiality provision in the Whistleblower Policy. The press releases stated HFPA would investigate the claims made in the article and that Asi would be placed on probation pending the results of the investigation. While this information was not public knowledge when the press releases were issued, nothing in the Whistleblower Policy guarantees confidentiality to one accused of misconduct, nor does it provide that the existence of an investigation into misconduct would be kept confidential. Asi has not shown the issuance of the press releases was in any

18

way prohibited by the Whistleblower Policy and has failed to demonstrate a probability of success on any claim that the press releases breached the Whistleblower Policy.

### ii. *Code of Conduct*

The HFPA Code of Conduct sets forth "the values, expectations, and standards" of the HFPA, which its members must agree to abide by. Asi claims HFPA's press releases breached the section of the Code which states "the HFPA will protect the reporter's confidentiality to the fullest extent possible." This section provides in pertinent part, "We encourage anyone who is aware of a potential violation of this Code of Conduct or any other HFPA policy to speak up and report any concerns. . . . Although individuals are encouraged to identify themselves while making reports so that any necessary follow-up can be undertaken, the hotline accepts anonymous reports. In any case, the HFPA will protect the reporter's confidentiality to the fullest extent possible (although information may need to be shared to facilitate an investigation and response to a report)." "Reporter" in this context does not refer to journalists such as Asi, but rather to those who report violations of the Code of Conduct. As with the Whistleblower Policy, this section of the Code of Conduct provides confidentiality to those who report misconduct, not those who are accused of it.

In the context of TheWrap's article, Asi is not a "reporter" of misconduct who is guaranteed any confidentiality by the Code. Nothing in the Code prevents HFPA from disclosing that a member is being investigated or placed on probation for public accusations of sexual misconduct. Asi has not presented evidence demonstrating HFPA's press releases breached any provision of the Code of Conduct. As a result, he has not established a

probability of success on a claim for breach of contract stemming from an alleged breach of the Code of Conduct.

### iii. *Bylaws*

Asi next contends the press releases violated HFPA's Bylaws. Specifically, Asi points to the provision of the Bylaws which states "[i]nformation disclosed at any meeting of the Members that is not generally known to the public, including Association . . . legal matters . . . shall, not be disclosed by Members to third parties at any time without approval of the Chief Executive Officer or the Board." This language appears in section 4.16 of Article IV of the Bylaws, which governs official meetings of HFPA's members. Other sections of Article IV provide details on the scheduling and place of these official meetings, including sections on remote attendance, voting rights, and other procedural aspects of these official meetings. Section 4.16 sets forth rules for decorum and civility at these meetings and closes with the language quoted by Asi regarding the confidentiality of information disclosed at the meetings that is not otherwise known by the general public.

This confidentiality provision cannot support any claim for breach of contract in connection with the press releases. First, Asi has not offered any evidence showing the investigation and his probation were discussed at an official meeting of HFPA members pursuant to Article IV of the Bylaws. The confidentiality provision in question only applies to information disclosed at such meetings. If the investigation and his probation were not discussed at an official member meeting under Article IV before the press releases were issued, the confidentiality provision in question is simply irrelevant. Second, by its express terms, section 4.16 only prohibits HFPA members from disclosing the content of meetings, it does not prohibit HFPA itself from

20

disclosing any content discussed at these meetings.  Asi has not shown this confidentiality provision prohibited HFPA from disclosing the information contained in the press releases.  For these reasons, we find Asi has failed to establish any probability of success at showing HFPA breached the Bylaws by issuing the press releases.

As Asi has not put forth any evidence showing HFPA breached the terms of the Whistleblower Policy, Code of Conduct, or Bylaws by issuing the press releases, he has failed to carry his burden of establishing a probability of success on his claim for breach of contract in connection with the press releases.  As Asi has failed to carry his burden under prong two, we find the trial court erred in denying HFPA's motion as to this cause of action.

> b. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349.) "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031.) "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz, supra,* 24 Cal.4th at pp. 349–350.) "A plaintiff claiming breach must allege the defendant's wrongful conduct was contrary to the contract's purpose and the parties' legitimate expectations." (*Cordoba Corp. v. City of Industry* (2023) 87 Cal.App.5th 145, 156.) "It is universally recognized the scope of conduct

prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373.)

"To prove breach of the implied covenant of good faith and fair dealing, plaintiff must show that defendants engaged in conduct which frustrated plaintiff's rights to the benefits of the parties' agreement." (*Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1037.)

The Grievance Policy outlines certain procedures by which claims of misconduct are to be investigated, including whether a report will be referred to an outside law firm, how that firm will conduct its investigation and prepare its report, HFPA's obligation to maintain records relating to such complaints, as well as the procedure for the imposition of disciplinary sanctions where a report of misconduct has been substantiated. It also provides that members accused of sexual or physical assault will be placed on probation pending the outcome of an investigation. The policy does not contain a confidentiality provision, nor does it make any mention of confidentiality. As such, it does not guarantee confidentiality to the accuser or the accused in the context of investigations of misconduct.

Asi has not put forth any evidence or argument showing how the public acknowledgment that an investigation was ongoing or that he had been placed on probation pending the outcome of that investigation—without disclosing any details of the investigation itself—in any way frustrated the procedures or purpose of the Grievance Policy. The purpose of the Grievance Policy is to establish a process to investigate claims of misconduct and discipline members in instances where those claims are substantiated. Asi has not shown the press releases prevented or frustrated the procedures or process outlined in the Grievance Policy. Asi does not allege the press

releases prevented the outside law firm from conducting an investigation according to the Grievance Policy, or that it jeopardized HFPA's obligation to maintain records relating to reports of misconduct. He has not identified any provision or purpose of the policy which was frustrated by the issuance of the press releases.

Asi has also not offered any explanation as to how the terms of the Grievance Policy could give rise to a legitimate expectation that the existence of HFPA's investigation and his probation would be kept confidential. We find no legitimate expectation of such confidentiality can be read into the Grievance Policy. As set forth above, the Code of Conduct and Whistleblower Policy make it clear that HFPA would endeavor to keep only certain aspects of investigations confidential; specifically, it endeavors to provide confidentiality only to those who report misconduct, not those who are accused of it. In light of this limited guarantee of confidentiality, the Grievance Policy cannot be legitimately or reasonably read to impliedly guarantee confidentiality to all aspects of an investigation, including the existence of an investigation itself and a member's placement on probation pending the results of the inquiry.

As Asi has not put forth any evidence indicating the press releases frustrated his rights to the benefits of the Grievance Policy, he has not carried his burden to establish a probability of success on the claim for breach of the implied covenant of good faith and fair dealing. The trial court erred in denying HFPA's motion to strike this claim.

23

### c. *Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing*

In opposing HFPA's motion below, Asi did not offer any argument or evidence to establish a probability of success on his third cause of action for tortious breach of the implied covenant of good faith and fair dealing. Instead, he exclusively argued that the press releases did not form the basis of this cause of action. The same is true on appeal. HFPA argues the cause of action for tortious breach of the implied covenant only exists in the context of insurance contracts. Asi does not address this argument in his briefing.

"Because the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, 'compensation for its breach has almost always been limited to contract rather than tort remedies.' [Citations.] At present, this court recognizes only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies." (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 43.) "[T]ort recovery is considered appropriate in the insurance policy setting because such contracts are characterized by elements of adhesion and unequal bargaining power, public interest and fiduciary responsibility." (*Id.* at p. 52.) However, cases have recognized other contracts may support a claim for tortious breach of the implied covenant where they are "sufficiently analogous to insurance to support the imposition of tort liability." (*Chu v. Old Republic Home Protection Co., Inc.* (2021) 60 Cal.App.5th 346, 355 [finding home protection contracts are not sufficiently analogous to insurance contracts]; *Cates Construction, supra,* 21 Cal.4th at p. 60 [holding construction performance bonds are not sufficiently analogous to insurance contracts].)

24

Asi has not attempted to carry his burden to show any of the alleged contract documents discussed above are sufficiently analogous to insurance contracts to support the imposition of tort liability for breach of the implied covenant of good faith and fair dealing. Even if we were to assume Asi could validly pursue such a claim here, he has failed to carry his burden of putting forth evidence establishing a probability of success on the merits of such a claim. Accordingly, we find the trial court erred in denying HFPA's motion as to the third cause of action for tortious breach of the implied covenant of good faith and fair dealing.

4.      *Interference Claims*

Asi's fourth cause of action for intentional interference with contract and fifth cause of action for intentional interference with prospective economic relations are based on allegations that HFPA interfered with Asi's relationship with the BBC and Al-Quds Al-Arabi. As the parties rely on similar arguments and evidence for these two claims, we will discuss them together.

To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

The elements of the tort of interference with prospective economic advantage are "(1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the

25

defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (*Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324, 1340–1341.) "The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.)

In his complaint and briefing, Asi alleges HFPA interfered with his relationships with the BBC and Al-Quds Al-Arabi. In his briefing before us, Asi claims he was suspended by Al-Quds Al-Arabi and several unidentified people have declined to work with him because of the press releases. Asi's opposition to HFPA's motion below did not provide evidence of any purported interference with his relationship with Al-Quds Al-Arabi. Asi's declaration and its exhibits were the only evidence put forth by Asi in opposition to HFPA's anti-SLAPP motion. Nothing in his declaration or attached exhibits alleges or evidences any harm to his relationship with Al-Quds Al-Arabi, much less any harm to that relationship stemming from the press releases. Asi has not established a probability of success on any claim of interference with his contractual or prospective relationship with Al-Quds Al-Arabi stemming from the press releases.[4]

---

[4]     The same is true with regard to Asi's assertion that "several people" have refused to work with him as a result of the press releases. Nothing in Asi's declaration or supporting exhibits substantiates this assertion, and it does not appear in Asi's complaint. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 893 (*Medical Marijuana, Inc.*)

As for the alleged interference with his relationship with the BBC, Asi states in his declaration that the BBC suspended him indefinitely as, "a result of the HFPA's statements to the media." The only evidence offered to substantiate this claim is the assertion in Asi's declaration that "My BBC editor informed me by telephone that the suspension was because of the HFPA's announcement of the investigation and 'sexual assault' statements in the LA Times." Asi does not identify this editor by name, nor has Asi put forth a declaration, affidavit, or testimony from this editor substantiating the claim. This purported statement by Asi's editor is unquestionably hearsay as it is an out of court statement offered for the truth of the matter asserted: namely, that the BBC suspended Asi because of HFPA's second press release.[5] HFPA objected to this portion of Asi's declaration as hearsay and was overruled by the trial court. On appeal, HFPA argues the trial court erred in overruling this objection. We agree.

To carry the burden under the second prong, a plaintiff must demonstrate the merit of the challenged claim with "'competent admissible evidence.'" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) Evidence Code section 1200, subdivision (b), provides "hearsay evidence is inadmissible" except as otherwise provided by law. "[T]he hearsay rule applies" in anti-SLAPP proceedings. (*Id.* at p. 942.)

---

["We reiterate that the pleading itself provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion"]; see also *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672 (*Paulus*) ["As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings"].)

[5]      Evidence Code section 1200, subdivision (a) defines hearsay as "a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."

27

As a result, hearsay evidence "cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial." (*Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 776, internal quotation marks omitted.) In ruling on an anti-SLAPP motion to strike, "declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)

Asi does not address this issue in his briefing before us and has not shown an exception to the hearsay rule applies here to render this portion of his declaration admissible. Below, he did not dispute this section of his declaration was inadmissible hearsay, but claimed he would be able to substantiate this claim through subpoenas in discovery and thus should be given "leeway" to rely on hearsay evidence, citing *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138 (*Fashion 21*).

Asi's reliance on *Fashion 21* is misplaced. In *Fashion 21*, the Court of Appeal held the trial court did not commit reversible error in considering an unauthenticated videotape in ruling on an anti-SLAPP motion to strike. (*Id.* at p. 1148.) In reaching this conclusion, the Court drew a sharp distinction between inadmissible hearsay and evidence that merely lacks authentication. "Evidence such as the videotape in this case, which is only excludable on the ground it lacks proper authentication, stands on a different footing in terms of its ability to support the plaintiffs' cause of action. Evidence made inadmissible by the hearsay rule, the parol evidence rule or a privilege could never be introduced at trial and therefore could never support a judgment for the plaintiff." (*Ibid.*) *Fashion 21* does not permit a plaintiff to rely on

28

inadmissible hearsay to carry its burden in opposing an anti-SLAPP motion to strike.

We find the trial court erred in overruling HFPA's objection to this portion of Asi's declaration. The hearsay evidence regarding the purported conversation between Asi and his editor at the BBC is inadmissible. The trial court should not have considered it in ruling on HFPA's motion. This hearsay statement was the sole piece of evidence put forth by Asi to establish the press releases interfered with his relationship with the BBC. When it is removed from the equation, we can only conclude Asi has failed to demonstrate a probability of success based on alleged interference with his contract or relationship with the BBC.

As Asi has failed to put forth any admissible evidence showing the HFPA's press releases interfered with his contract or prospective relationships with the BBC or Al-Quds Al-Arabi, he has not carried his burden in establishing a probability of success on the causes of action for interference and the trial court erred in denying HFPA's motion as to these claims.

5.   *Business and Professions Code section 17200*

California's Unfair Competition Law (UCL), codified at Business and Professions Code section 17200, et seq., prohibits "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200; see *Clark v. Superior Court* (2010) 50 Cal.4th 605, 610.) A UCL plaintiff must plead and prove the defendant engaged in a business practice that was either unlawful (i.e., forbidden by law), unfair (i.e., harm to the victim outweighs any benefit), or fraudulent (i.e., is likely to deceive members of the public). (*Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 206.) "An

29

'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law*.'" (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 351.)

To establish a probability of success on this claim, Asi relies on the assertion that HFPA breached its contracts with him by issuing the press releases. As we have already determined Asi has failed to establish the press releases breached the Whistleblower Policy, Grievance Policy, Code of Conduct, or Bylaws, he cannot rely on such breaches to form the predicate of his UCL claim. Absent such a breach, Asi has not carried his burden to establish the press releases were unlawful, unfair, or fraudulent. As a result, Asi has not established a probability of success on his UCL claim in connection with the press releases. The trial court thus erred in denying HFPA's motion on this claim.

### 6. *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001, internal quotation marks omitted.) To qualify as "outrageous," the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. (*Ibid.*) Mere insults, indignities, threats, annoyances, or petty oppressions are not sufficient. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)

In denying HFPA's motion as to this claim, the trial court found Asi had carried his burden of showing the press releases were extreme and outrageous conduct because HFPA violated its procedures in issuing them. However, as we have determined, Asi has not shown HFPA breached any policy or contract in issuing the press releases. Therefore, he cannot rely on such claims to establish the element of extreme or outrageous conduct by HFPA.[6]

We find Asi has failed to demonstrate HFPA's issuance of the press releases was extreme or outrageous. *Comstock v. Aber* (2012) 212 Cal.App.4th 931 (*Comstock*) is instructive. The plaintiff in *Comstock* sued her employer and two coworkers for sexual assault. (*Id.* at pp. 934–935.) One of the defendant coworkers cross-complained against her, denying her allegations and asserting claims for defamation and intentional infliction of emotional distress based on the allegation that the plaintiff had falsely accused him of sexual assault to friends and other coworkers, as well as in reports made to a hospital nurse, the police, and to the company's human

---

[6]     On appeal, Asi argues for the first time that he can establish a probability of success on this claim because HFPA erroneously characterized the accusations against him as allegations of "sexual assault" rather than "sexual misconduct." The claim does not appear in Asi's complaint and thus he cannot rely on this allegation to defeat HFPA's anti-SLAPP motion to strike. (*Medical Marijuana, Inc.*, *supra*, 46 Cal.App.5th at p. 883 ["the act or acts underlying a claim for purposes of an anti-SLAPP statute *is determined from the plaintiffs' allegations*" and the court "will not 'insert into a pleading claims for relief based on *allegations of activities that plaintiffs simply have not identified*'"]; *Paulus*, *supra*, 139 Cal.App.4th at p. 672.) Additionally, having failed to raise this argument in the trial court, Asi may not assert it for the first time on appeal. (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695 ["'"theories not raised in the trial court cannot be asserted for the first time on appeal"'"]; *Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857 ["'"a party is not permitted to change its position on appeal and raise new issues not presented in the trial court"'"].)

resources department.  (*Id*. at pp. 936–937.)  In response, the plaintiff brought an anti-SLAPP motion to strike the defendant's cross-complaint, which was granted by the trial court.  (*Id*. at p. 939.)  The Court of Appeal affirmed, finding the defendant had not established a probability of success on his claim for intentional infliction of emotional distress, finding "The complained-of conduct here—reporting a sexual assault to the Kaiser nurse and Kluwer's HR department—is hardly 'extreme and outrageous.'"  (*Id*. at p. 954.)

HFPA's conduct here falls well below the allegations found to be insufficient in *Comstock*.  HFPA's press releases merely confirmed HFPA was investigating public accusations against Asi and that Asi would be placed on probation pending the results of the investigation.  In other words, HFPA's statements acknowledged it was aware of the accusations against Asi and was following its internal policies in handling these allegations of misconduct.  If accusations of sexual assault do not qualify as extreme or outrageous conduct, it is difficult to see how simply acknowledging an investigation into public claims of sexual assault or misconduct could give rise to a claim for intentional infliction of emotional distress.

The press releases simply do not rise to the level of conduct which has been held sufficiently extreme and outrageous such as to support a claim for intentional infliction of emotional distress.  (See, e.g., *Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 229–230 [finding threats of physical harm directed at plaintiff and his family were sufficient to state a claim]; *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1598 [same]; *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486–487 [finding falsely accusing plaintiff of being a self-confessed child molester who steals from his church and abuses and deals drugs, coupled with statements that plaintiffs should

32

have their teeth knocked out and reproductive organs removed was sufficiently extreme and outrageous]; *KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1032 [holding that callously informing children that their friends had been murdered was sufficient to give rise to a claim for intentional infliction of emotional distress].)

We find Asi has failed to establish a probability of success on his claim for intentional infliction of emotional distress stemming from HFPA's press releases, and HFPA's motion to strike this claim should have been granted.

## DISPOSITION

The trial court's order is affirmed in part and reversed in part, and the cause is remanded with directions to enter an order granting HFPA's special motion to strike the first, second, third, fourth, fifth, sixth, and seventh causes of action to the extent they are based on HFPA's issuance of the press releases.  HFPA is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.